PEOPLE v McCRACKEN

PEOPLE v O'CONNELL

Docket Nos. 77-367, 77-1545. Submitted June 6, 1978, at Detroit.—
Decided February 5, 1979.

James L. McCracken and James D. O'Connell were both con-
victed of conspiracy to break and enter a dwelling house with
intent to commit larceny therein and of receiving and conceal-
ing stolen property over the value of $100, Wayne Circuit

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 350, 754, 756, 758, 781.

[2] 75 Am Jur 2d, Trial §§ 802, 809.

81 Am Jur 2d, Witnesses § 54 *et seq.*

Preventing or limiting cross-examination of prosecution's witness as
to his motive for testifying. 62 ALR2d 624-653.

[3] 5 Am Jur 2d, Appeal and Error §§ 553, 624.

75 Am Jur 2d, Trial §§ 166, 263.

Counsel's appeal in criminal case to racial, national, or religious
prejudice as grounds for mistrial, new trial, or reversal. 45
ALR2d 314, 315.

Propriety and effect of prosecuting attorney's argument to jury
indicating his belief or knowledge as to quilt of accused. 50
ALR2d 797-802.

[4] 21 Am Jur 2d, Criminal Law § 331.

Accused's right to inspection of minutes of state grand jury. 20
ALR3d 35-40, 42-44, 46.

[5] 5 Am Jur 2d, Arrest § 33.

16 Am Jur 2d, Constitutional Law §§ 545, 549.

[6] 5 Am Jur 2d, Appeal and Error §§ 838, 885.

[7] 16 Am Jur 2d, Conspiracy § 9.

21 Am Jur 2d, Criminal Law §§ 81, 82, 123.

75 Am Jur 2d, Trial §§ 369, 424, 751.

[8] 16 Am Jur 2d, Conspiracy § 36.

[9] 16 Am Jur 2d, Conspiracy § 15.

[10] 66 Am Jur 2d, Receiving Stolen Property §§ 1, 3-5, 7, 9, 10, 23, 25,
26.

Sufficiency of description of stolen property in indictment or infor-
mation for receiving it. 99 ALR2d 815-823, 825, 826, 838-841.

[11] 5 Am Jur 2d, Appeal and Error §§ 831, 838.

[12] 5 Am Jur 2d, Appeal and Error § 810.

Court, Michael L. Stacey, J. Both defendants appeal, raising several allegations of error. *Held:*

1. A jury instruction on intent which stated that the jury could hold a person responsible for the consequences of his acts and that intent would be presumed from the doing of a wrongful act did not impermissibly shift the burden of proof from the prosecution to the defense where no error is shown in the instructions as a whole.

2. It was not reversible error for the trial court to sustain an objection to a question as to whether a witness who had been granted immunity from prosecution was aware of the maximum prison sentence he could have received had he not been granted immunity.

3. No manifest injustice or reversible error resulted from the conduct of the prosecutor during cross-examination and closing argument.

4. Failure of the prosecution to provide defendant McCracken with a full transcript of a grand jury proceeding used to impeach the defendant was not error where defense counsel was provided with that portion of the transcript actually used, the grand jury proceeding was on a collateral matter, and the material was used strictly for impeachment.

5. Defendant McCracken was not prejudiced by and no denial of due process resulted from a 540-day interval between the commission of the offense and his arrest.

6. The evidence against defendant O'Connell was not sufficient to justify an inference that he was guilty of conspiracy to break and enter a dwelling house.

7. Some evidence was presented on every material element of the crime of receiving and concealing stolen property, and it was for the jury, not the Court of Appeals, to weigh that evidence.

Affirmed as to defendant McCracken. Defendant O'Connell's conviction of receiving and concealing stolen property is affirmed, but his conviction of conspiracy to break and enter is reversed.

BRONSON, J., concurred separately to emphasize that the trial court's erroneous instruction on intent had no bearing on the case because the only contested issue was whether the defendants had actually committed the offenses, and, therefore, the instruction did not impair in any manner a defense presented by the defendants. The error was harmless.

Opinion of the Court

1. Criminal Law — Instructions to Jury — Intent — Burden of Proof.

An instruction to a jury on intent which stated that the jury was warranted in holding a party responsible for the natural, probable and legitimate consequences of his acts and that intent may be presumed from the doing of a wrongful, fraudulent or illegal act did not impermissibly shift the burden of proof from the prosecution to the defendant where no error is shown in the instructions when viewed as a whole.

2. Witnesses — Criminal Law — Immunity from Prosecution.

The sustaining of an objection by a trial court to a question as to whether a witness was aware of the maximum prison term he could have received if he had not been granted immunity does not constitute reversible error, because where a witness has been granted immunity in exchange for his agreement to testify it is necessary only that the court make known to the jury that a grant of immunity has been made.

3. Appeal and Error — Criminal Law — Prosecutor's Remarks — Failure to Object — Prejudice.

Failure of a defendant to object at trial to allegedly prejudicial remarks of the prosecutor bars appellate review unless the prejudice is so egregious that it cannot be cured by judicial instruction.

4. Criminal Law — Impeachment — Grand Jury Proceedings — Collateral Matter.

Failure of the prosecution to provide a defendant with a full transcript of grand jury proceedings used to impeach the defendant did not result in reversible error where the prosecutor used only 1-1/2 pages of the transcript, which were made available to the defendant and an opportunity to view the transcript in its entirety was given defendant, where the grand jury proceeding pertained to a collateral matter, and where the transcript material was used strictly for impeachment purposes.

5. Arrest — Criminal Law — Delay in Arrest — Constitutional Law — Due Process — Prejudice.

A defendant has no constitutional right to be arrested; a lengthy delay between the commission of an offense and a defendant's arrest does not violate the defendant's right to due process of law where no prejudice to the defendant is shown.

6. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — ELE-
MENTS OF OFFENSE — JURY — VERDICTS.

The evidence must be viewed in the light most favorable to the
prosecution where a defendant has alleged that the evidence
was insufficient to prove beyond a reasonable doubt his guilt of
the crime charged, and a jury verdict of guilty will not be
overturned unless there is an absence of any direct or circum-
stantial evidence to prove an essential element of the crime.

7. CONSPIRACY — INTENT TO CONSPIRE — SUBSTANTIVE OFFENSE.

An intent to conspire and an intent to commit a substantive
offense must be shown in order to convict a defendant of
conspiracy.

8. CONSPIRACY — FACTS — CIRCUMSTANTIAL EVIDENCE — INFERENCES.

The facts, even if circumstantial in nature, must warrant at least
a fair inference of the elements to be established in order to
make out a case of conspiracy.

9. CONSPIRACY — PARTIES TO CONSPIRACY.

A defendant, to become a party to a conspiracy, need not be a
party to the original agreement, know all the co-conspirators,
or participate in the full scope of the conspiracy; if he joins
after the formation, or aids with an understanding of the
purpose, he becomes a party to the conspiracy.

10. RECEIVING STOLEN GOODS — CONCEALMENT — ELEMENTS OF OF-
FENSE.

The elements of the crime of receiving and concealing stolen
property are: (1) that the property was stolen, (2) the value of
the property, (3) the receiving, possession or concealment of the
property by the defendant with the knowledge that the prop-
erty had been stolen, (4) the identity of the property as being
that previously stolen, and (5) the guilty constructive or actual
knowledge of the defendant that the property received or
concealed had been stolen.

11. APPEAL AND ERROR — CRIMINAL LAW — EVIDENCE — WEIGHT OF
. EVIDENCE — JURY QUESTION.

It is for the jury, not the Court of Appeals, to weigh the evidence
where some evidence was presented on every material element
of a charged crime.

CONCURRENCE BY BRONSON, J.

12. CRIMINAL LAW — INSTRUCTIONS TO JURY — INTENT — HARMLESS
ERROR.

*An instruction to the jury that wrongful acts, knowingly or* .

*intentionally committed, can neither be justified nor excused on the ground of innocent intent was harmless error where the sole contested issue in the case was whether the defendants actually committed the offense with which they were charged; the instruction did not impair in any manner a defense presented by the defendants and, although erroneous, had no bearing on the case.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* (in *O'Connell)* and *Timothy C. Scallen* (in *McCracken),* Assistants Prosecuting Attorney, for the people

*Constance E. Cumbey,* for defendant McCracken on appeal.

*Carl Ziemba,* for defendant O'Connell on appeal.

Before: BASHARA, P.J., and BRONSON and C. W. SIMON, JR.,\* JJ.

BASHARA, P.J. Defendants raise 14 issues in their appeals from jury convictions of conspiracy to break and enter a dwelling house with intent to commit larceny therein, MCL 750.157a, 750.110; MSA 28.354(1), 28.305, and of receiving and concealing stolen property over the value of $100, MCL 750.535; MSA 28.803.

The charges in this case arose from the burglary of the home of a Ferndale coin collector. At trial, the three participants in the burglary, Michael Thomas, Ron Oesterling, and Joel Reed, testified pursuant to a grant of transactional immunity. In brief, their testimony indicated that defendant McCracken became involved in the planning of the

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

burglary and that he indicated he could get rid of any coins stolen through defendant O'Connell.

After the burglary, the coins were put into a briefcase and taken at a later date by McCracken to O'Connell's office and left there.

Both defendants denied any involvement in the burglary or with the stolen coins.

At the outset, we wish to observe that this was a lengthy and complex trial, fraught with difficulties. The trial judge is to be commended for his excellent demeanor and control of the unusual circumstances, at times exacerbated by the actions of perhaps overly zealous counsel.

Defendants initially claim that the jury instruction on intent impermissibly shifted the burden of proof from the prosecution to the defense. The trial judge instructed the jury as follows:

"The question of intent is one that is hard to establish directly because grown persons do not always disclose the object they have in view in any acts in which they may indulge, and you have to gather the intent from the character of the act, the circumstances surrounding it and from conduct of a like character which may appear as tending to aid you in finding and discovering it. But in connection with all this, unless the testimony satisfied you of something else you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his acts. The intent may be presumed from the doing of a wrongful, fraudulent or illegal act. But this inference or presumption is not necessarily conclusive. The law presumes that every man intends the legitimate consequences of his own acts. Wrongful acts, knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent."

This instruction has been considered by the Court many times. A similar instruction was approved in

*People v Ross,* 69 Mich App 705; 245 NW2d 335 (1976), and in *People v Adams,* 48 Mich App 595; 210 NW2d 888 (1973).

Defendants rely on *People v Wright,* 78 Mich App 246; 259 NW2d 443 (1977), which relied on *People v Smith,* 67 Mich App 145; 240 NW2d 475 (1976), to proscribe a like instruction. However, it is the opinion of this panel that *Wright's* reliance on *Smith* was misplaced. Reversal in *Smith* was predicated on an error in the self-defense instruction. In fact, the intent instruction was approved by two of the three judges on the *Smith* panel.

Defendants objected to the instruction as given. Nonetheless, under any standard, when reviewed as a whole, we find no reversible error in this regard. *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), *People v Ross, supra.*

The other claims of error in jury instructions are raised here for the first time. Our review reveals no manifest injustice or prejudicial error.

Defendants also argue that they were deprived of fundamental fairness by rulings of the trial court, and prosecutorial misconduct during cross-examination and closing argument.

We find that sustaining an objection to a question as to whether a witness was aware of the maximum prison term he could have received if he had not been granted immunity does not constitute reversible error. It is only required that the court make known to the jury that a grant of immunity has been made. *People v Love,* 43 Mich App 608; 204 NW2d 714 (1972).

Just as jury instructions are to be read as a whole, so must the remarks of the prosecutor. Failure to object bars appellate review unless the prejudice is so egregious that it cannot be cured by

judicial instruction. *People v Hernandez,* 80 Mich
App 465; 264 NW2d 343 (1978).

Our review of the record convinces us that no
manifest injustice or reversible error result from
prosecutorial conduct. *People v Robinson,* 386
Mich 551, 563; 194 NW2d 709 (1972), *People v
Ellis,* 62 Mich App 109, 113; 233 NW2d 205 (1975),
*People v Foster,* 77 Mich App 604, 611; 259 NW2d
153 (1977).

The fact that the prosecutor misstated a fact
regarding one of the witnesses does not, in light of
this record, constitute reversible error. We are
mindful of the oft-quoted wisdom of Justice NORTH
in *People v Burnstein,* 261 Mich 534, 538; 246 NW
217 (1933), where in it was stated:

"* * * in the haste and heat of a trial it is humanly
impossible to obtain absolute perfection, and of neces-
sity some allowance must be made in determining
whether impromptu remarks are to be held prejudicial.
Statements should not be held prejudicial if they are
made in good faith, and, when fairly construed, they do
not appear to have been such as influenced the jury
adversely to the rights of the accused."

Defendant McCracken next argues that it was
reversible error for the prosecution to fail to pro-
vide him with a full transcript of grand jury
proceedings used to impeach him. The record re-
veals that the prosecutor referred to only a page
and a half of the transcript of the grand jury
proceedings on cross-examination. Defense counsel
was provided with that portion of the transcript
actually used, and was permitted to view the
transcript in its entirety.

Defendant relies on *People v Karoll,* 315 Mich
423; 24 NW2d 167 (1946), and *People v Bellanca,*
386 Mich 708; 194 NW2d 863 (1972), in support of

his position. However, both of those cases are distinguishable from the facts of the case at bar in that the cases involved arose from grand jury proceedings. In the instant case, the grand jury proceeding pertained to a collateral matter. The few pages of transcript were used strictly for impeachment purposes. In view of these circumstances, we find no reversible error.

Defendant McCracken also argues the interval of 540 days from the alleged commission of the offense until arrest was a delay sufficient to deprive him of due process. Defendant relies on *People v Hernandez,* 15 Mich App 141; 170 NW2d 851 (1968). However, *People v Noble,* 18 Mich App 300; 170 NW2d 916 (1969), held there was no constitutional right to be arrested.

We need not dwell unduly on this contention. Suffice it to say that even were we to accept the reasoning of *Hernandez, supra,* a denial of due process was not evident in the matter before us as we find no prejudice to the defendant. See *People v McNeal,* 72 Mich App 507; 250 NW2d 110 (1976).

The final issue, raised by defendant O'Connell, is whether the evidence was sufficient to prove beyond a reasonable doubt his guilt of the crimes charged.

In examining such a claim, the evidence must be viewed in the light most favorable to the prosecution. A jury verdict will not be overturned unless there is an absence of any direct or circumstantial evidence to prove an essential element of the crime charged. *People v Flinnon,* 78 Mich App 380, 384; 260 NW2d 106 (1977), *People v Milton,* 81 Mich App 515, 517; 265 NW2d 397 (1978).

Defendant O'Connell was charged with conspiracy to break and enter and with receiving and

concealing stolen property. The gist of conspiracy is an unlawful agreement. There must be a showing of an intent to conspire and an intent to commit the substantive offense. *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974).

However, even if the facts are circumstantial in nature, they must warrant at least a fair inference of the elements to be established. *People v Miller,* 49 Mich App 53, 59; 211 NW2d 242 (1973). Charges of conspiracy cannot be made out by piling inference upon inference. *People v Atley, supra.*

Defendant need not be a party to the original agreement, know all the co-conspirators, or participate in the full scope of the conspiracy. If he joins after the formation, or aids with an understanding of its purpose, he becomes a party to the conspiracy, *e.g., People v Scotts,* 80 Mich App 1; 263 NW2d 272 (1977).

We have examined in detail the voluminous record in this case. The only evidence which even remotely touches upon knowledge or an agreement between defendant O'Connell and others to perpetrate the burglary was the conversation between defendants O'Connell and McCracken allegedly overheard by witness Thomas. His testimony related a conversation between O'Connell and McCracken which consisted only of a general discussion of coins and their value. He testified that there was no discourse about the planned burglary, nor was the origin of any coins discussed. We cannot conclude that this evidence, standing alone, is sufficient to justify an inference that defendant O'Connell was guilty of conspiracy to break and enter a dwelling house. See *People v Sobczak,* 344 Mich 465, 469; 73 NW2d 921 (1955).

Defendant O'Connell's conviction of conspiracy to break and enter must therefore be set aside, as

there simply was no evidence to support even an inference in that regard.

Also challenged is the sufficiency of the evidence regarding the crime of receiving and concealing stolen property.

The elements of the crime, which must be evidentially proven, are: (1) that the property was stolen; (2) the value of the property; (3) the receiving, possession or concealment of such property by the defendant with the knowledge of the defendant that the property had been stolen; (4) the identity of the property as being that previously stolen; and (5) the guilty constructive or actual knowledge of the defendant that the property received or concealed had been stolen. See *People v Martinovich,* 18 Mich App 253, 257; 170 NW2d 899 (1969).

Although the evidence to support this charge is at best sketchy, and often conflicting, all three of the burglary participants testified that they had been told a lawyer could get rid of the coins. All three of them claimed seeing the coins put into the briefcase that was later taken into O'Connell's office and left there.

We find some evidence was presented on every material element of the crime. It is for the jury, not the Court, to weigh this evidence. *People v Eastway,* 67 Mich App 464, 469; 241 NW2d 249 (1976).

Affirmed as to defendant McCracken.

Defendant O'Connell's conviction of receiving and concealing stolen property is affirmed. His conviction of conspiracy to break and enter is reversed.

C. W. SIMON, JR., J., concurred.

BRONSON, J. *(concurring).* I concur in Judge BASHARA's thorough and well-written opinion.

However, I write separately to amplify on one point which I feel needs clarification.

The concluding sentence of the instruction given in the present case, "[w]rongful acts, knowingly or intentionally committed can neither be justified or excused on the ground of innocent intent", was labeled as erroneous by the Michigan Supreme Court in *People v Holcomb*, 395 Mich 326; 235 NW2d 343 (1975). In *Holcomb* defendant admitted committing the "criminal" act, *i.e.*, taking the money from the victim by force. He denied, however, that he intended to rob the victim. Instead, he insisted that he was merely recovering money that he thought was rightfully his.[1] Since defendant admitted the act, the only contested issue in the case was his intent. By instructing the jury that wrongful acts cannot be justified by an innocent intent the trial court completely vitiated defendant's sole defense. In effect, the instruction told the jury that even if it believed defendant's testimony it must nevertheless convict him because his innocent intent was irrelevant once he admitted committing the act.

The present case, however, differs significantly from *Holcomb.* Defendants' intent in taking the coins was not a contested issue. Defendants did not claim that their intent in taking the coins was innocent, but rather that they did not take the coins at all. The sole contested issue in the case was whether defendants actually committed the act. Thus, the instruction did not vitiate nor impair in any manner a defense presented by defendants. It is clear that once the jury concluded that defendants committed the acts, it logically inferred

[1] A person who in good faith believes that he is taking property to which he is rightfully entitled does not have the felonious intent necessary for robbery or larceny. *People v Henry,* 202 Mich 450, 455; 168 NW 534 (1918).

that they possessed the requisite intent.[2] It is equally clear under the facts of this case that once the jury found that defendants committed the criminal acts, there was *no* evidence nor logical reason from which *any* reasonable person could have drawn an inference of innocent intent. Therefore, the instruction, although erroneous, had absolutely no bearing on the case.

Taking the instructions as a whole and reviewing them in relation to the facts of this case, and the nature of the defenses raised, it becomes apparent that the inclusion of the one erroneous sentence in the court's otherwise proper set of instructions would not have affected the outcome of the case. The error was therefore harmless beyond a reasonable doubt.

---

[2] A jury may properly infer a defendant's intent from the circumstances surrounding the activity in question. See *People v Phillips,* 385 Mich 30, 37; 187 NW2d 211 (1971), LaFave & Scott, Criminal Law, § 28, pp 202-203.